SEALED

J. Bryan Quesenberry
2750 SW Coast Avenue
Lincoln City, OR 97367
801-473-9951
jbq.esq@gmail.com
*Plaintiff/Relator*

FILED BY MC D.C.
JAN 3 1 2025
ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - MIAMI

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| UNITED STATES OF AMERICA, ex rel. J. BRYAN QUESENBERRY,<br><br>Plaintiff,<br><br>vs.<br><br>ENERGY SOLUTION SERVICES, L.L.C.; SPHYRAENA VENTURES LLC; STASIN PROPERTIES, LLC; DONALD R. EKEY; ROBERT E. SPANOS, JR.; and LORI S. BROCHIN,<br><br>Defendants. | **COMPLAINT FOR VIOLATION OF FEDERAL FALSE CLAIMS ACT**<br><br>**(Filed in camera and under seal)**<br>**(DO NOT PLACE ON PACER)**<br><br>JURY TRIAL DEMANDED<br><br>Civil Action No. 25-cv-14034 |

Plaintiff/Relator J. Bryan Quesenberry, a licensed attorney acting *pro se* on behalf of the United States of America (the **"Government"** or the **"Federal Government"**) and against Defendants, alleges, based upon personal knowledge, relevant documents, information, and belief, as follows.

## INTRODUCTION AND HISTORY OF THE FALSE CLAIMS ACT

1. This is an action to recover damages and civil penalties on behalf of the United States of America arising from false and/or fraudulent records, statements, and claims made and caused to be made by Defendants and/or their agents and employees, in violation of the federal False Claims Act, 31 U.S.C. §§ 3729, *et seq*. **("FCA")**.

2. This action seeks to recover millions of federal dollars wrongfully loaned to the Defendants through the Federal Government's Payroll Protection Program **("PPP")**. The PPP provides a pathway to borrowers to receive forgiveness of these loans.

3. Pursuant to the PPP, the Federal Government spent hundreds of billions of dollars in stimulus funding, as well as other federal funding, to support and aid legitimate businesses through the coronavirus pandemic.

4. The FCA was enacted during the Civil War, and was substantially amended in 1986, and again in 2009 and 2010. Congress amended the FCA in 1986 to enhance the Federal Government's ability to recover losses sustained as a result of fraud against the United States after finding that fraud in federal programs was pervasive and that the FCA, which Congress characterized as a primary tool for combating government fraud, was in need of modernization. The amendments create incentives for individuals to come forward with information about fraud against the Federal Government without fear of reprisals or inaction, and enable the use of private legal resources to prosecute fraud claims on the Federal Government's behalf.

5. The FCA prohibits, *inter alia*: (1) knowingly presenting, or causing to be presented, a false or fraudulent claim for payment or approval; and (2) knowingly making or using, or causing to be made or used, a false or fraudulent record or statement material to a false or fraudulent claim. 31 U.S.C. §§ 3729(a)(1)(A), (B). Anyone who violates the FCA is liable for a civil penalty for each such claim, plus three times the amount of the damages sustained by the Government. 31 U.S.C. § 3729(a)(1)(A) (as adjusted by the Federal Civil Penalties Inflation Adjustment Act of 1990 [28 U.S.C. § 2461 note; Public Law 104-410]).

6. In 2009, Congress amended the FCA to clarify that a "claim" includes "any request or demand, whether under a contract or otherwise, for money or property and whether or not the United States has title to the money or property that (i) is presented to an officer,

employee, or agent of the United States; or (ii) is made to a contractor, grantee, or other recipient, if the money or property is to be spent or used on the Government's behalf or to advance a Government program or interest…" 31 U.S.C. § 3729(b)(2).

7. The FCA allows any person having information about an FCA violation to bring an action for himself and the Federal Government, and to share in any recovery. The FCA requires that the complaint be filed under seal for a minimum of 60 days (without service on Defendants during that time) to allow the Federal Government time to conduct its own investigation and to determine whether to join the suit.

8. Based on the foregoing laws, *qui tam* Plaintiff/Relator seeks through this action to recover all available damages, civil penalties, and other relief for the violations alleged herein in every jurisdiction to which Defendants' misconduct has extended.

## PARTIES

9. Plaintiff/Relator J. Bryan Quesenberry **("Relator")** is a resident of Oregon. He is an attorney licensed to practice law in Utah and brings this action on behalf of the United States of America, the real party in interest.

10. Defendant Energy Solution Services, LLC **("Energy Solution")** is a Florida entity located at 1405 35th Avenue, Vero Beach, Florida 32960. It was formed February 3, 2011, with a principal place of business in Indian River County, Florida.

11. Defendant Donald R. Ekey **("Ekey")** is an individual residing, upon information and belief, in Indian River County, Florida. Ekey is Energy Solution's sole manager and agent according to the Florida Secretary of State.

12. Defendant Sphyraena Ventures LLC **("Sphyraena")** is a Florida entity located at 672 Marbury Lane, Longboat Key, Florida 34228. It was formed May 10, 2016, with a principal place of business in Manatee County, Florida.

13. Defendant Robert E. Spanos, Jr. **("R. Spanos")** is an individual residing, upon information and belief, in Manatee County, Florida. According to Florida Secretary of State records, Spanos is the sole manager and registered agent of Sphyraena.

14. Defendant Stasin Properties, LLC ("**Stasin**") is a Florida entity located at 1425 Gulf of Mexico Drive, Unit 505, Longboat Key, Florida 34228. It was formed on June 15, 2005, with a principal place of business in Sarasota County,[1] Florida.

15. Defendant Lori S. Brochin **("Brochin")** is an individual residing, upon information and belief, in Sarasota County, Florida. According to the Florida Secretary of State records, Brochin is the manager of Stasin, which means he does business in Sarasota County, Florida.

**JURISDICTION AND VENUE**

16. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 and 31 U.S.C. § 3732, the latter of which specifically confers jurisdiction on this Court for actions brought pursuant to 31 U.S.C. §§ 3729 and 3730. Although this issue is no longer jurisdictional after the 2009 amendments to the FCA, to Relator's knowledge there has been no statutorily relevant public disclosure of the "allegations or transactions" in this Complaint, as those concepts are used in 31 U.S.C. § 3730(e), as amended by Pub. L. No. 111-148, § 10104(j)(2), 124 Stat. 119, 901-02.

17. Moreover, whether or not such a disclosure has occurred, Relator would qualify as an "original source" of the information on which the allegations or transactions in this

[1] The SBA dataset provides the "Project County Name" as Manatee, but this appears to be incorrect. Longboat Key is divided between Manatee County and Sarasota County and Stasin's address is in the latter.

Complaint are based. Relator researched and discovered the pertinent entity information and individual information of each Defendant.

18. This Court has personal jurisdiction over Defendants pursuant to 31 U.S.C. § 3732(a) because that section authorizes nationwide service of process and because Defendants' principal places of business are located in the Southern District of Florida as alleged above.

19. Venue is proper in the Southern District of Florida pursuant to 28 U.S.C. § 1391(b)-(c) and 31 U.S.C. § 3732(a) because Defendants' principal place of business is in the Southern District of Florida, and because violations of 31 U.S.C. §§ 3729 *et seq*. alleged herein occurred within this district.

## THE PAYCHECK PROTECTION PROGRAM

20. Congress added sections 1102 and 1106 of the Coronavirus Aid, Relief, and Economic Security Act **("CARES Act")**. Section 1102 contained a new program called the Paycheck Protection Program **("PPP")** and was part of the U.S. Small Business Administration's **("SBA")** 7(a) Loan Program. These two sections were intended to provide economic relief to small businesses nationwide adversely impacted by the coronavirus pandemic and the COVID-19 Emergency Declaration issued by then-President Trump on March 13, 2020.

21. Due to the COVID-19 emergency, many small businesses nationwide were experiencing economic hardship as a direct result of the Federal, State, and local public health measures that were being taken to minimize the public's exposure to the coronavirus.

22. The SBA received funding and authority through the CARES Act to modify existing loan programs and establish the new PPP loan program to assist small businesses nationwide adversely impacted by the coronavirus pandemic.

23. Section 1102 of the Act temporarily permitted SBA to guarantee 100% of 7(a) loans under the PPP. Section 1106 of the CARES Act provides for forgiveness of up to the full principal amount of qualifying loans guaranteed under the PPP.

24. The CARES Act was intended to provide relief to America's small businesses expeditiously.

25. The CARES Act gave lenders delegated authority to process loan applications for PPP funding. SBA allowed lenders to rely on certifications of the borrowers in order to determine eligibility of the borrower and use of loan proceeds, and to rely on specified documents provided by the borrower to determine qualifying loan amount, and eligibility for loan forgiveness. Lenders were held harmless for borrowers' failures to comply with PPP rules.

26. Defendants submitted documentation necessary to establish eligibility such as payroll processor records, payroll tax filings, form 1099s, income and expenses documentation.

27. In general, Defendants calculated an amount to borrow by aggregating payroll costs from the previous 12 months for employees whose principal place of residence was the United States. Annual employee salaries were capped at $100,000. Defendants then calculated the average monthly payroll cost and multiplied that amount by a factor of 2.5.

28. On the PPP application, a representative of each Defendant had to certify in good faith to a number of representations to the Federal Government. The second bullet point under the CERTIFICATIONS AND AUTHORIZATIONS section on the PPP loan application states:

> ***The Applicant is eligible to receive a loan*** under the rules in effect at the time this application is submitted that have been issued by the Small Business Administration (SBA) implementing the Paycheck Protection Program under Division A, Title I of the Coronavirus Aid, Relief, and Economic Security Act (CARES Act) (the Paycheck Protection Program Rule). [Emphasis added].

29. Another certification on the application states, "Current economic uncertainty makes this loan request necessary to support the ongoing operations of the Applicant."

30. Another certification on the application states, "Current economic uncertainty makes this loan request necessary to support the ongoing operations of the Applicant."

31. On the first page of the PPP application, Defendants were required to state the number of their employees and certify that, "The Applicant was in operation on February 15, 2020 ***and had employees*** for whom it paid salaries and payroll taxes or paid independent contractors, as reported on Form(s) 1099-MISC." (Emphasis added).

32. Defendants also further certified on their PPP loan applications, "***The Applicant will provide to the Lender documentation verifying the number of full-time equivalent employees on the Applicant's payroll*** as well as the dollar amounts of payroll costs, covered mortgage interest payments, covered rent payments, and covered utilities for the eight-week period following this loan." (Emphasis added).

33. Each Defendant also "further certif[ied] that the information provided in this application and the information provided in all supporting documents and forms is true and accurate in all material respects."

34. Finally, each Defendant certified that it "underst[ood] that knowingly making a false statement to obtain a guaranteed loan from SBA is punishable under the law, including under 18 USC 1001 and 3571 by imprisonment of not more than five years and/or a fine of up to $250,000; under 15 USC 645 by imprisonment of not more than two years and/or a fine of not more than $5,000; and, if submitted to a federally insured institution, under 18 USC 1014 by imprisonment of not more than thirty years and/or a fine of not more than $1,000,000."

## GENERAL ALLEGATIONS

**Energy Solution and Ekey**

35. Energy Solution (EIN 27-4717667) applied and was approved for a PPP loan of $1,436,727.00 on June 25, 2020 (loan number 4326068006), from the originating lender

Kabbage, Inc. This loan is marked "Charged Off" in the most recent publicly available version of the SBA's applicable dataset of PPP loans, which was made public on October 3, 2023.

36. Although Energy Solution represented on its PPP loan application that it had 17 employees, to qualify for its $1,436,727.00 PPP loan, the company would have had to have had at least 69 employees,[2] all paid at or over the PPP program's $100,000 salary eligibility cap, during the eligibility calculation period (typically 2019).

37. Moreover, there are strong indications that Energy Solution fabricated the employee count used in connection with its PPP loan application. Energy Solution does not appear to have ever had a website, and a Google search of its name yielded very few results.

38. A search of the Nexis online news library yielded only a single mention of the company in a Florida newspaper: a brief entry in the "Courthouse News" section of the *Press Journal* of Vero Beach, Florida.[3] Similarly, a search of NewsBank, a proprietary news and information database that draws on thousands of local, regional, national, and international sources, yielded no mention of the company.

39. Mergent Intellect **("Mergent")**, a subscription-only business and financial information platform that provides data collected by Dun & Bradstreet, suggests that Energy Solution had only one employee in 2020 (no estimate was available for 2019).

40. Energy Solution apparently used the business type "Self-Employed Individuals" on its PPP loan application, according to the most recent publicly available SBA dataset, though in fact it is a limited liability company.

---

[2] This number is derived by dividing the loan amount of $1,436,727 by $20,833, which would be the amount attributable to each employee of the borrower earning the annual equivalent of $100,000 or more in the eligibility calculation period.

[3] Press Journal (Vero Beach, FL), May 15, 2011. The entry reads: "Energy Solution Services LLC, Donald Ekey, 1405 35th Ave., Vero Beach, painting contractor."

41. The principal place of business listed on its official corporate filings is, according to Indian River County property records, a three-bedroom, single-family residence whose primary owner is "Ekey Donald R (Trs)[4] Fbo[5] The Ekey Revocable Trust."

42. On its application for the PPP loan, Energy Solution used the NAICS code 212321, which is for "Construction Sand and Gravel Mining." However, there is no indication that the borrower has conducted business in this sector.

43. According to Florida Secretary of State records, Energy Solution owns two fictitious business names **("FBNs")**: "Don's High Quality Painting" and "Recovery Connection." Google searches of both FBNs yielded very few results and no websites were found under either FBN. A search of the Nexis online news library database identified two mentions of Don's High Quality Painting[6] and no mentions of Recovery Connection. Both FBNs use the same address as Energy Solutions which, as noted above, is a single-family residence.

44. Research on Ekey turned up his LinkedIn profile, which identifies him as Don Ekey in Vero Beach, Florida.[7] The profile describes him as the director of Recovery Connection, a home-based organization in Florida that provides alcohol and drug addiction recovery services. One section of Ekey's LinkedIn profile states that he was a self-employed contractor from 1972 to 2015 and that he has "also been a licensed contractor for over a decade, a Limited Liability Company in the State of Florida, focusing on complete residential renovations and energy conservation."

[4] "Trs" is an abbreviation for trustee.
[5] "Fbo" is an abbreviation for "for the benefit of."
[6] Press Journal (Vero Beach, FL), February 2, 2004: Don's High Quality Painting was mentioned in an article on new members of the Sebastian River Area Chamber of Commerce. The Orlando Sentinel, December 10, 2001, included Don's High Quality Painting in a list of new businesses.
[7] https://www.linkedin.com/in/don-ekey-2b35b888/

45. To summarize, Energy Solution obtained a $1.4 million PPP loan claiming 17 employees despite likely having only one employee, being in the construction and gravel mining business, having no internet presence, having very little media presence, being headquartered in a single-family house, and owning two FBNs relating to a painting business and a drug/alcohol rehab business (neither of which had an internet or media presence). Energy Solution appears to have inflated its number of employees in order to obtain a larger PPP loan.

**<u>Sphyraena and Spanos</u>**

46. Sphyraena (EIN 81-2585477) applied and was approved for a PPP loan of $1,436,727.00 on June 27, 2020 (loan number 5089218003), from the originating lender Kabbage, Inc. This loan is marked "Exemption 4"[8] in the most recent publicly available version of the SBA's applicable dataset of PPP loans.

47. Although Sphyraena used the figure of three employees on its PPP loan application to qualify for its $1,436,727.00 loan, the company would have had to have had at least 69 employees, all paid at or over the PPP program's $100,000 salary eligibility cap, during the eligibility calculation period (typically 2019).

48. A report obtained from Mergent suggests that Sphyraena had seven employees in 2019 and annual sales of $90,000.

49. Sphyraena's principal place of business is a 1,920-square-foot, single-family residence, according to Manatee County property records. This residence was owned by R. Spanos and Amy Luciano Spanos until May 29, 2024, when they sold the property for $1,525,000.

---

[8] This is a description of the PPP loan status. It means the PPP loan is disbursed but not paid in full or charged off.

50. Research on Sphyraena strongly suggests additional fabrications in its PPP loan application. Sphyraena does not appear to have ever had a website, and a Google search of its name yielded very few results.

51. A search of the Nexis online news library yielded no articles mentioning the company. Likewise, a search of NewsBank yielded no mention of the company. Research on R. Spanos turned up a LinkedIn profile for a Robert Spanos in Longboat Key, Florida, who appears to be the same individual.[9] The profile identifies him as executive vice president of corporate operations at Emblok (www.emblok.com), a medical-device company headquartered in Grand Rapids, Michigan. The LinkedIn profile, which provides Spanos's career history dating back to April 2004, contains no references to Sphyraena.

52. On its application for the PPP loan, Sphyraena used the NAICS code 531390, which is for "Other Activities Related to Real Estate." There is no indication that Sphyraena has been in the real-estate business.

53. To summarize, Sphyraena obtained a $1.4 million PPP loan despite claiming just three employees and having estimated annual sales of $90,000 in 2019, is in the real estate business despite having no internet or media presence, is headquartered in a residential house, and its owner makes no mention of Sphyraena on his LinkedIn page (despite mentioning his other businesses there). Sphyraena, thanks to its owner R. Spanos, appears to have inflated its number of employees in order to obtain a larger PPP loan.

**Stasin and Brochin**

54. Stasin (EIN 20-3020721) applied and was approved for a PPP loan of $1,436,727.00 on June 27, 2020 (loan number 5088478009), from the originating lender

[9] https://www.linkedin.com/in/robert-spanos-69033328/

Kabbage, Inc. This loan is marked "Exemption 4" in the most recent publicly available version of the SBA's applicable dataset of PPP loans.

55. Although Stasin used the figure of three employees on its PPP loan application, to qualify for its $1,436,727.00 PPP loan, Stasin would have had to have had at least 69 employees, all paid at or over the PPP program's $100,000 salary eligibility cap, during the eligibility calculation period (typically 2019).

56. A report obtained from Mergent suggests that Stasin had two employees in 2019 and annual sales of $90,000. The Mergent report also references a different address for the company: 1595 Brandon Hall Drive, Atlanta, Georgia 30350. This is a 4,414-square-foot, single-family residence. According to Fulton County property records, it is owned by Gary Steven Brochin and Lori Sinder Brochin.

57. Research on Stasin strongly suggests that it is a fictitious business. The company does not appear to have ever had a website, and a Google search of its name yielded very few results. A search of the Nexis online news library did not yield any articles mentioning the company. Likewise, a search of NewsBank yielded no mention of the company. The borrower's name – Stasin Properties, LLC – implies that it is in the real estate business, and Stasin used the NAICS code 531390, which is for "Other Activities Related to Real Estate," on its PPP loan application. There is no indication, however, that the borrower has been in the real-estate business.

58. A search of Sarasota County and Manatee County property records did not identify any property owned by Stasin. (The City of Longboat Key is divided between the two counties.)

59. Stasin's supposed principal place of business is a 2,099-square-foot, four-bedroom condominium, according to county property records, and is owned by the LSB

Revocable Trust, whose trustee is Lori Sinder Brochin.[10] Florida Secretary of State records identify Lori S. Brochin as managing member and registered agent of Stasin.

60. To summarize, Stasin obtained a $1.4 million PPP loan based on having only two employees, had a condominium apartment as its headquarters, had no internet presence, had no media presence, and is purportedly in the real estate business despite having no properties titled in its name (and having no real estate brokerage affiliation). Stasin appears to have inflated its number of employees in order to obtain a larger PPP loan.

61. Finally, it is of possible relevance that Energy Solution, Sphyraena, and Stasin (the three entities that borrowed the PPP loans at issue herein) borrowed the exact same PPP loan amount ($1,436,727.00) from the same lender (Kabbage, Inc.). Energy Solution and Sphyraena had their loans approved on the same day. Sphyraena and Stasin are located in the same town in Florida (Longboat Key). According to the town's website, its total population in 2023 was 7,537.[11] These similarities could be coincidences, or they could be indications of coordination or collusion among these defendants and/or their lender.

## FALSE CLAIMS ACT CAUSES OF ACTION

### First Cause of Action
### Violation of 31 U.S.C. § 3729(a)(1)(A)-(B)
### (against Energy Solution, Sphyraena, and Stasin)

62. Relator realleges and incorporates by reference the allegations contained in the foregoing paragraphs as though fully set forth herein.

63. This is a claim for treble damages and penalties under the False Claims Act, 31 U.S.C. § 3729, *et seq*., as amended.

[10] Her name appears in the database as "BROCHIN LORI SINDER (TTEE)."
[11] https://www.longboatkey.org/

64. By virtue of the acts described above, Defendants knowingly presented or caused to be presented, false or fraudulent claims to the United States Government, or authorized agent of the United States Government, for payment or approval.

65. By virtue of the acts described above, Defendants knowingly made or used, or caused to be made or used, false or fraudulent records or statements material to false or fraudulent claims for payment by the Government.

66. By reason of Defendants' acts, the United States has been damaged, and continues to be damaged, in a substantial amount to be determined at trial.

67. Additionally, the United States is entitled to a maximum penalty for each and every violation arising from Defendants' unlawful conduct alleged herein.

**Second Cause of Action**
**Conspiracy to Violate the False Claims Act, 31 U.S.C. § 3729(a)(1)(C)**
**(against all Defendants)**

68. Relator realleges and incorporates by reference the allegations contained in the foregoing paragraphs as though fully set forth herein.

69. The FCA imposes liability on any person who conspires to commit a violation of the FCA. 31 U.S.C. § 3729(a)(1)(C).

70. The individual Defendants conspired with their respective entity Defendants to violate the FCA.

71. As set forth more fully above, the individual Defendants directed or knowingly allowed direction to be given to the entity Defendants to apply for PPP loans, PPP loan forgiveness, and certified or caused to be certified the applications containing false statements.

72. The United States has been damaged by the aforementioned misrepresentations in a dollar amount to be determined at trial. Accordingly, the United States government is

entitled to treble damages under the FCA in an amount to be determined at trial, plus a civil penalty as deemed appropriate.

## PRAYER FOR RELIEF

WHEREFORE, *qui tam* Plaintiff/Relator prays for judgment against each Defendant as follows:

1. That this Court enter judgment against each Defendant in an amount equal to three times the damages the United Sates has sustained because of each Defendant's actions, plus a civil penalty of not less than $5,500 and not more than $11,000 for each violation of 31 U.S.C. § 3729;
2. That Relator be awarded the maximum amount allowed pursuant to 31 U.S.C. § 3730(d);
3. That Relator be awarded all costs of this action, including attorney's fees and expenses; and
4. That Relator recover such other relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Relator hereby demands a trial by jury.

Dated: January 23, 2025

Respectfully submitted,

J. Bryan Quesenberry
Plaintiff/Relator

Quesenberry
2750 SW Coast Ave.
Lincoln City, OR 97367

Retail

RDC 99

33128

U.S. POSTAGE PAID
FCM LG ENV
LINCOLN CITY, OR 97367
JAN 23, 2025

$2.31

S2324N501024-24

USMS INSPECTED
BY

U.S. District Court
Southern District of Florida
400 North Miami Avenue
Miami, FL 33128